**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FELTON L. MATTHEWS, JR., | 3:08-CV-322-LRH (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| ROBERT LEGRAND, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendant Ferro's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Doc. #62). Plaintiff has opposed (Doc. #70), and Defendant has replied (Doc. #71). Also before the court is Plaintiff's motion for injunctive relief (Doc. #60). Defendants have opposed (Doc. #66), and Plaintiff has replied (Doc. #73). After a thorough review, the court recommends that the motion for summary judgment should be granted dismissing Defendant Ferro and that Plaintiff's motion for injunctive relief should be denied.

## I. BACKGROUND

This is an inmate civil rights complaint brought under 42 U.S.C. § 1983. At all relevant times, Plaintiff was in custody of the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP") and Lovelock Correctional Center ("LCC"). The Amended Complaint (Doc. #22) alleges that in March 2008, all Defendants were involved in Plaintiff's illegal transfer from LCC to ESP based on unfounded charges of sending threatening letters to judges and the Attorney

1

General's office. (Am. Compl. (Doc. #60) 6.) In Count II, Plaintiff alleges that an unnamed LCC investigator and other prison staff interfered with his legal mail on various occasions. (*Id.* at 11.) He claims that his legal mail is being tampered with in order to frustrate his claims, which challenge the validity of various laws relating to sex offenders. (*Id.* at 16.) On December 8th, 2008, the court allowed Plaintiff to substitute Defendant Ferro for the unnamed LCC investigator. Defendant Ferro now moves to dismiss the claims against him in Counts I and II of the Amended Complaint. Additionally, Plaintiff seeks a transfer to another institution so that his mail will no longer be tampered with.

## II. LEGAL STANDARD

**A.    Motion for Summary Judgment**

Because the court considers matters not contained in the pleadings in resolving the instant motion, the court will construe the instant motion as for summary judgment. *Anderson v. Angelone*, 86 F.3d 923, 934 (9th Cir. 1996). The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi*, 84 F.3d at 1197. In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530, 126 S.Ct. 2572, 65 L.Ed.2d 697 (2006);

2

*Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, --- U.S. ----, ----, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (citations and quotation omitted). Instead, the instant motion requires the court to "balance the competing claims of injury and . . . the effect of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). A plaintiff seeking a preliminary injunction must establish the following:

3

(1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Id.* (citations omitted).[1]

The Prison Litigation Reform Act (PLRA) imposes certain guidelines on the prospective relief to be granted to an inmate litigant in a lawsuit challenging prison conditions:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

### III. DISCUSSION

**A.   Motion for Summary Judgment**

Defendant Ferro argues that he should be dismissed from the complaint because he was employed with NDOC until November 2007, several months before the conduct alleged against him in Counts I and II of the complaint. (Mtn. Summ. J. 2.) Furthermore, he contends that he never held the job title of investigator at LCC, and that while he did have limited factfinding responsibilities in his position, these were related to officer misconduct. (*Id.* Ex. A, at 2.)

---

[1] Before *Winter*, the courts in this circuit applied an alternative, "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter,* the Supreme Court did not directly address the continued validity of the balancing approach. *See Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has never rejected that formulation, and I do not believe it does so today."). In light of the *Winter* decision, however, the Ninth Circuit has indicated, "To the extent our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am. Trucking Assocs. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009). Accordingly, this court will require Plaintiff to make a showing on all four of the preliminary injunction requirements.

Therefore, Defendant submits that he would not have participated in the decision to transfer Plaintiff to another institution. He also submits that he had no duties related to investigating inmate legal mail and no personal knowledge regarding Plaintiff's claims. Therefore, he contends he was erroneously submitted for the Doe defendant in Counts I and II of the complaint.

Plaintiff's arguments in his opposition brief are not well taken. First, Plaintiff argues that Defendant Ferro authored the false of Notice of Charges that were at issue in another lawsuit before this court, Case No. 3:07-565-LRH-RAM. Regardless of the veracity of that allegation, it is wholly unconnected to the claims made against Defendant Ferro in the complaint. Next, Plaintiff appears to argue that new evidence has come to light since filing this complaint suggesting that "Joseph Ferrero [sic] was not neutral in the C/O Linda Buck investigation." (Pl.'s Opp. to Mtn. for Summ. J. (Doc. #70) Ex. A, at 2.) Plaintiff then states that this "implicates Joseph Ferrero for Count IV for at least declaratory relief". (*Id.*) It is unclear how this is the case and even if it were so, this still has nothing to do with the claims actually pled against Defendant Ferro in Counts I and II, which turn on illegal prison transfer and mail tampering allegations.

Plaintiff next argues that Defendant Ferro should remain in the lawsuit because he was employed at LCC during some of the mail tampering incidents alleged in Count II of the complaint. This is insufficient to satisfy the personal participation requirement in a § 1983 cause of action. Defendant Ferro submits a sworn affidavit that he had no personal participation in the processing of mail at LCC, that he has no personal knowledge of the incidents alleged in the complaint, and that he cannot recall anything involving Plaintiff or his legal mail. (*Id.*) In response, Plaintiff offers nothing other than his assertion that Defendant Ferro should be held responsible as a result of his investigative duties at LCC. At this stage of the proceedings, the opposing party may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. The plaintiff has failed to do this. Moreover, he seems to acknowledge the

possibility that Defendant Ferro was erroneously substituted into the complaint in a section entitled "Mistaken Identity (?)" in his opposition brief, where he states: "Plaintiff assumed that Mr. Ferrero (Ferro) was the hispanic Investigator that did the taped interview on 2-14-08 for the Patton-Parfait incident. If he is not, then its an honest mistake." (Oppo. 4.) In light of the undisputed evidence that Defendant Ferro was not personally involved in the conduct alleged against him, summary judgment should be granted dismissing him from the complaint.

**B.     Motion for Preliminary Injunction**

Plaintiff seeks a transfer from ESP to another prison to prevent his mail from being tampered with by NDOC employees.

**1.     Probability of Success on the Merits**

To obtain a preliminary injunction, Plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson*, 72 F.3d at 1430. "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). To establish a violation of this right, an inmate must show "actual injury," defined as "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim." *Id.* at 348 (citation and internal quotations omitted). When a prisoner brings a retrospective denial of access claim, he must show the loss of a "nonfriviolous" or "arguable" underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Plaintiff alleges that defendants tampered with his legal mail on multiple occasions. First, plaintiff claims that on October 13, 2007, unidentified workers at LCC interfered with the mailing of a discovery request for a habeas action. (Def.'s Mtn. for Prelim. Inj. (Doc. #60) 6.) Plaintiff cryptically states that "Claim fails and I can't meet burden! 9-28-08 the claim is admitted by the D.A. in Family Court!" (*Id.*) It is unclear what causal relationship the late mailing of the discovery request had with the habeas petition. Plaintiff therefore fails to

6

demonstrate that the alleged conduct resulted in an "actual injury." Furthermore, because the habeas action is not identified with any specificity, Plaintiff fails to demonstrate that he had a "nonfrivolous" or "arguable" claim. More importantly, he offers no evidence to demonstrate that the prison is responsible for the delayed mailing. Defendants are not responsible for what happens to Plaintiff's mail after it leaves their custody and is transported by the U.S. Postal Service to the recipient for processing. The court also takes judicial notice of the fact that in a related action before this court involving a similar allegation, Defendants submitted evidence that mail logs from LCC do not indicate that Plaintiff mailed any outgoing legal mail on that day. (Case No. 3:08-CV-387-LRH-VPC, Report and Recommendation July 27th, 2009 (Doc. #99, at 7.)

Second, Plaintiff alleges that defendants tampered with a discovery request that he sent from ESP to the Clark County Clerk. He claims that he sent the request from ESP on January 3, 2009, and that it reached the Clark County Clerk on January 5, 2009. However, the files were "held up 5 days," and were not stamped received or filed until January 10, 2009. (Mtn. 4.) It is unclear how any NDOC actors could have personally participated in the delayed filing of the document by the County Clerk. Furthermore, Plaintiff alleges no prejudice from the delayed processing of his discovery request.

Next, Plaintiff alleges that on January 11th, 2009, he sent another petition for habeas corpus to the state court. However, the petition never reached the state court, and was never filed. (*Id.*) Puzzlingly, Plaintiff states that a copy of this action was served on E.K. McDaniel and the District Attorney. It is unclear how these defendants could have been served in this action if it was never filed with the court. Defendants have provided evidence that something was mailed to the Eighth Judicial District by Plaintiff on January 12, 2009, the first business day after Plaintiff alleges he mailed the petition. (Def.'s Opp. to Mtn. for Prelim Inj. (Doc. #66, Ex. B.) Finally, Plaintiff alleges that he was prejudiced to the extent that the habeas petition was never filed, but fails to provide a copy of the unmailed petition or any identifying information. In light of the unrefuted evidence submitted by Defendants, and assuming the

7

truth of that assertion that Plaintiff mailed such a petition, the court concludes that the loss of the petition occurred at some point after the mail left Defendants' custody. Therefore, they are not liable for depriving Plaintiff of his right of access to the courts on this occasion.

Third, Plaintiff alleges that sometime around January 28, 2009, he sent a request to the Ninth Circuit Court of Appeals that was never received. It is unclear what this request was, and what role it played, if any, in an adverse outcome in the legal proceedings. Again, Plaintiff offers no actual evidence that NDOC actors played any role in the problems with the mail. He vaguely refers to two other documents that were also allegedly tampered with. These allegations suffer from the same problems as above. The remaining allegations of mail tampering in July 2002 and May 2004 occurred well beyond the statute of limitations.

The court further notes that Plaintiff has failed to demonstrate how any of the named defendants[2] personally processed or even came into contact with his mail. To be liable under 42 U.S.C. § 1983, a defendant must have been personally involved in the alleged deprivation of the plaintiff's rights. There is no liability based on a theory of *respondeat superior*. Plaintiff has not indicated that any of the named defendants were ever involved in reviewing or sending his mail.

In his reply to Defendants' opposition and during the motion hearing, Plaintiff appears to argue a new basis for injunctive relief, maintaining that his transfer to ESP was illegal. "Transfers between institutions . . . are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Therefore, to avoid subjecting to judicial review "discretionary actions that traditionally have been the business of prison administrators", the Supreme Court has declined to recognize an inmate's constitutionally-protected liberty interest in being held at a given facility. *Id.*

/ / /

---

[2] Plaintiff names as defendants Correctional Officer Feil and Defendant Ferro. Plaintiff also mentions a "Mrs. Meegan" in the body of the complaint, but she does not appear to be a party to this action.

The court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims in Count II.

**2.      Irreparable Injury**

To obtain a preliminary injunction, Plaintiff must offer evidence that he will be irreparably injured without the injunction. *Johnson*, 72 F.3d at 1430. "Courts generally do look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991), *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").

The court has discussed the prejudice to Plaintiff from each of the alleged mail tampering incidents in the previous section, as it is an element of his access to the court claims. To reiterate, the court finds that the conclusory and unsupported nature of Plaintiff's allegations do not demonstrate a likelihood of imminent irreparable injury to his constitutional rights. Many of the mailings appear to discovery requests or other written correspondence to the court, and it is unclear how the delay in the transmittal of these documents prejudiced Plaintiff. While the loss of an important filing can have a serious impact on the ability of an inmate to litigate his claims, such an injury is not cognizable for purposes of this motion if there is no proof that the defendants are responsible for the mailing problems. Plaintiff has failed to carry his burden to establish a systematic occurrence of mail tampering attributable to Defendants that would warrant injunctive relief.

**3.      Balance of Hardships and Public Interest**

As discussed above, there is no apparent irreparable injury that will befall Plaintiff if injunctive relief is not granted. Should the court grant the injunction, however, Defendants would have to undertake the expense and effort of transferring Plaintiff to a different institution. Prison officials are granted substantial deference in regard to where prisoners are housed. Under the circumstances, the court is not inclined to undertake the drastic remedy of ordering the transfer of Plaintiff to another institution, as the public interest is not served by

an unneeded judicial intrusion into the complex administrative decisions of the Department of Corrections. Assuming Plaintiff had met his burden on the merits of the instant motion, there are far more narrowly tailored means to prevent mail tampering than removing an inmate from his institution, such as the adoption of special handling and tracking procedures to ensure that correspondence is promptly processed in the mail room. *See* 18 U.S.C. § 3626(a)(2) (PLRA provision requiring courts to employ the "least intrusive means necessary" in crafting injunctive relief).

Because none of the factors for evaluating injunctive relief favor granting the motion, Plaintiff's request for an institutional transfer should be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #62) and **DENYING** Plaintiff's Motion for Injunctive Relief (Doc. #60).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: August 7, 2009.

_____
UNITED STATES MAGISTRATE JUDGE